Judy Davis ROESEL, Plaintiff-Appellee, Cross-Appellant,

v.

JOLIET WROUGHT WASHER COMPANY, Defendant-Appellant, Cross-Appellee.

Nos. 77–1877, 77–1878.

United States Court of Appeals, Seventh Circuit.

Argued April 11, 1978.

Decided Jan. 18, 1979.

William R. Sullivan, Jr., Chicago, Ill., for defendant-appellant, cross-appellee.

James K. Lennon, Arlington Heights, Ill., for plaintiff-appellee, cross-appellant.

Before FAIRCHILD, Chief Judge, BAUER, Circuit Judge, and JAMESON, Senior District Judge.*

FAIRCHILD, Chief Judge.

This appeal ( # 77–1877) and cross-appeal ( # 77–1878) are the result of a claim alleging discrimination based upon sex, brought under Title VII of the 1964 Civil Rights Act, as amended 42 U.S.C. § 2000e, *et seq.* The claim arose from the employment relationship between appellant, Joliet Wrought Washer Company and Judy Davis Roesel. Ms. Roesel, in her complaint, charged that the company had demoted her from the position of Personnel Director, replaced her with a male, discharged her, refused her severance pay, and paid her a salary during the time she was employed which was less than the salary paid to a male with the same title. The district court entered judgment in favor of the plaintiff, finding, in essence, that the company had discriminated against Ms. Roesel by paying her a disproportionally lower salary than the salaries paid to male management employees, and lower than the company would have paid a man for the same job. The court awarded Ms. Roesel $4,500 in back pay for two years prior to filing her charge of discrimination. The court, however, found that the hiring of the new Personnel Director and subordination of the plaintiff was not discriminatory because the new Director was to perform duties which he was qualified to perform, but plaintiff was not. Furthermore, the court stated that Ms. Roesel had not been demoted, nor discharged, and therefore, was not entitled to severance pay. Requests for attorney fees by both parties were denied.

Defendant appeals from the judgment and the district court's order denying defendant's post-trial motions. Plaintiff cross-appeals from the denial of attorney's fees.

## BACKGROUND

Joliet Wrought Washer Company is a manufacturer of steel washers. The company employs approximately 250 employees, 50 of whom are office and management personnel.

Judy Davis Roesel is a thirty-five year old female who began her employment at Joliet Wrought Washer Company in the shipping department on July 28, 1968. In 1972, after having worked in various other departments, she was given the title of Personnel Director. Her only experience and training in personnel work came from the performance of her duties on the job.

In her position as Personnel Director, Ms. Roesel performed the following functions: handling the screening and hiring procedure for union employees, handling insurance claims, typing up pension plan claims, filling out unemployment compensation claims,

---

* The Honorable William J. Jameson, United States Senior District Judge for the District of Montana, is sitting by designation.

authorizing workmen's compensation claim settlements of up to $500, sitting in on collective bargaining negotiations, joining in drafting and carrying out an affirmative action plan, maintaining absentee and tardiness records, sitting in on employee grievance procedures.

Between 1972 and 1975, Ms. Roesel and Jean Agazzi were the only women in a management force of 20. Ms. Agazzi had the title of Pricing Supervisor. This job was described by her as figuring out prices and answering telephone calls from customers, and serving as Office Manager. She also had the power to hire hourly employees. The court found that Ms. Agazzi's duties were approximately equal to the responsibilities and duties performed by Ms. Roesel. These two women were the lowest paid management employees. Testimony revealed that during a 1974 contract compliance review of the company's affirmative action program, an issue was raised by the government agent concerning the salary level of Ms. Agazzi in comparison to that of the male Production Control Manager. Subsequently, Ms. Agazzi received two pay raises in rather rapid succession. Ms. Roesel was receiving $2,000 less than the salary paid to Ms. Agazzi after the two pay raises. Ms. Agazzi testified that she had never filed a discrimination complaint, nor was there a hearing concerning the government agent's comments.

In early 1975, the company's General Manager and Controller determined that the Personnel Department ought to be upgraded. They sought out a qualified individual. Mr. David Scholtes was ultimately hired for this position. He had been a Personnel Manager at another company, had a degree in Personnel Management, and had done personnel work in the Army. Scholtes came to work in early March, 1975 at a salary of $16,500. Ms. Roesel was making a salary of $9,000 at this time in the position of Personnel Director. Her salary was $4,000 less than the lowest paid male in management. Ms. Roesel had not been given an opportunity to apply for the new position as Personnel Director, nor had she been informed of this change until Mr. Scholtes arrived on the job. The General Manager then informed Ms. Roesel that she was to be Mr. Scholtes' assistant. Ms. Roesel testified that no further discussion took place with respect to her new position. She terminated her employment with the company on March 3, 1975. Testimony revealed that Mr. Scholtes' position included several additional responsibilities and a difference in the function of the position which required some qualifications Ms. Roesel did not have. The lower court, in reliance on this record, determined there was no discrimination based on sex in the hiring of Mr. Scholtes as Personnel Director.

Ms. Roesel filed a claim with the Fair Employment Practices Commission of Illinois ("FEPC") on March 10, 1975, charging discrimination. After an investigation, the FEPC concluded on September 6, 1975 that there was not reasonable cause to believe that the charge was true. A charge of discrimination was also filed with the Equal Employment Opportunity Commission ("EEOC") on March 10, 1975. The EEOC concluded that there was no reasonable cause to believe the charge was true. Plaintiff filed a complaint in the district court on March 18, 1976 pursuant to 42 U.S.C. § 2000e-5 (1970).

## I.

Joliet Wrought Washer Company vigorously contends that the district court erred in finding that the company had discriminated against plaintiff in violation of Title VII by paying her a salary that was disproportionately low prior to her termination.

The company contends that plaintiff has presented no evidence comparing the job she held with that held by any male. It is the plaintiff's contention that when management positions are involved, the totality of the circumstances, not merely job comparisons, must be considered.

There were no job descriptions nor guidelines set for determining salaries during the term of plaintiff's employment. Judge McMillen deemed the otherwise unexplained pay raises for Ms. Agazzi, after

challenge by the federal government, to be an admission by the company of discrimination in setting her former pay, vis-a-vis male management employees. Because he found Ms. Roesel's work to be equal to that of Ms. Agazzi, Judge McMillen reasoned that there was discrimination based on sex in paying Ms. Roesel less than Ms. Agazzi. In substance, the court inferred that the company, in paying an increased salary to Ms. Agazzi, recognized that it would have paid that salary to a male performing Ms. Agazzi's job, and the court inferred that, the jobs being equal, the company would have paid a male employee, performing the same work as Ms. Roesel, the increased salary paid Ms. Agazzi. Thus the court found sex-based discrimination in paying Ms. Roesel less.

■ This seems a reasonable analysis, and the finding is not clearly erroneous.

Defendant argues that the court could not find discrimination based on sex by equating plaintiff's job with that of another female and finding a difference in pay. This argument overlooks the fact that Ms. Agazzi's increase in salary had apparently been necessary to overcome a sex-based discriminatory difference in pay between Ms. Agazzi and the male employees. As Judge McMillen put it:

"I realize that both of the ladies were being paid considerably less than were the men of approximately the same supervisory or responsible level, but there again, I think the job content that the men were performing such as heads of departments in the case of Mr. Cook, department head in the case of Mr. Zupancic, would justify a variance between what they were paid and what the ladies were paid, so that I think the benchmark, you might say, for the proper compensation for Mrs. Roesel is someplace in the vicinity of what Mrs. Agazzi was earning rather than Mr. Cook or Mr. Zupancic or Mr. Scholtes was earning."

■ The court awarded $4,500 to the plaintiff for her last two years of work, based upon the difference between Ms. Roesel's pay and the increased pay of Ms. Agaz-

zi. We think this was a reasonable determination.

## II.

The company argues that the district court erred in allowing plaintiff to amend her complaint on the last day of the trial because it expanded the scope of the original EEOC charge. It also argues that it was prejudiced by not having adequate time to answer. Paragraph 4(d) of the complaint was amended to read:

(d) During the period she was employed as a Personnel Director [defendant] discriminated against the plaintiff by paying her less than the wages that a male employee in the title of Personnel Director is paid and other male employees in management positions. (The underlined portion is the amendment.)

Defendant alleges that the charge made to the Equal Employment Opportunity Commission by plaintiff did not sufficiently allege any act of sex discrimination prior to the hiring of Mr. Scholtes as Personnel Manager. The charge read as follows:

I was working for the Respondent for seven years and held the position of Personnel Director for the last four years. I had never received a reprimand or disciplinary action. Upon returning from a two week sick leave on March 3, 1975, I was discharged from the position of Personnel Director and replaced by a male, Dave Scholtes, who had only started with the company that day, March 3, 1975, with no prior knowledge of the job. To the best of my knowledge, Mr. Scholtes was hired at a salary of approximately $16,000 a year and I had been making $9,000 a year for the same job.

The district court allowed the amendment, concluding that the EEOC charge claimed discrimination in pay before March 3, 1975 as well as after, and awarded relief for discriminatory salary during two years previous.

■ It is true that the charge made the comparison between plaintiff's pay before March 3, and the pay of her male replace-

ment after that date. It did claim that the job was the same, and necessarily implied that her pay before March 3 was lower than a male would have been paid for the same work. Proving the discriminatory differential by comparison with the pay of male employees before March 3 did not, in our view, take the case outside the scope of the EEOC charge.

■ Courts have consistently required a liberal reading of EEOC charges and have allowed subsequent judicial proceedings to encompass any discrimination reasonably related to the charge. *Willis v. Chicago Extruded Metals Company*, 375 F.Supp. 362, 365 (1974). See *Jenkins v. Blue Cross Mutual Hospital Insurance, Inc.*, 538 F.2d 164 (7th Cir. 1976), *cert. denied*, 429 U.S. 986 (1976).

With respect to allowing the amendment to the complaint, the district court averted to facts set out in plaintiff's pre-trial memorandum, and concluded that the defendant had been put on notice that plaintiff was complaining about the salary paid her during her employment before March 3, 1975. The facts with respect to the salaries and job content of other management employees were before the court. We are not persuaded that the court abused its discretion, or was unfair to defendant, in allowing the amendment.

## III.

Finally, each party argues that it is entitled to attorney fees.

Section 706(k) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(k) provides that the prevailing party may recover an attorney's fee as part of its costs. Section 706(k) provides as follows:

In any action or proceeding under this title the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person.

The Supreme Court, in determining when awards would be permitted for successful defendant, recently stated:

" . . . a district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable or without foundation, even though not brought in subjective bad faith."

*Christianburg Garment Co. v. Equal Employment Opportunity Commission*, 434 U.S. 648, 98 S.Ct. 694, 54 L.Ed.2d 648, 46 L.W. 4105. *See also United States Steel Corporation v. United States*, 519 F.2d 359 (3rd Cir. 1975) *Carrion v. Yeshiva University*, 535 F.2d 722 (2nd Cir. 1976).

■ Each party prevailed to some extent. Plaintiff prevailed in establishing discrimination against her on account of sex and is recovering back pay for a two year period based on a $2,000 differential. Defendant prevailed in defeating her claim that Scholtes was hired to perform the same job at a $7,000 per year differential and that she was terminated or justifiably quit as a result of discrimination. In view of the results, plaintiff's action could not be said to be frivolous, unreasonable, or without foundation. Under the circumstances, with each party prevailing in some part, it seems sound to award fees to neither.

The judgment appealed from is affirmed. Plaintiff is entitled to an attorney's fee as well as costs on appeal. She may include an itemized statement of attorney's services in connection with the appeal in her bill of costs.