**Thomas MAHONEY, Plaintiff,**

v.

**Russell KESERY, et al., Defendants.**

**No. 90–C–224.**

United States District Court,
E.D. Wisconsin.

Nov. 18, 1991.

sisted of unlawful arrest and malicious prosecution claims against city of Milwaukee police officer Russell Kesery and Milwaukee county assistant district attorney Mary Smith. During the midst of the two-day jury trial of the action, the court granted defendant Smith's motion for a directed verdict.

At the close of the trial the jury returned a verdict for the plaintiff on his claims against officer Kesery and awarded compensatory damages of $20,000. In a decision and order dated July 18, 1991, the court denied defendant Kesery's post-trial motions and addressed the matter of the plaintiff's entitlement to attorney's fees under 42 U.S.C. § 1988 as a partially "prevailing party" under 42 U.S.C. § 1983. *Mahoney v. Kesery*, 770 F.Supp. 472 (E.D.Wis. 1991).

In light of the unsatisfactory conduct of one of the plaintiff's attorneys, the court opined that an award of attorney's fees to the plaintiff greater than $1,475 would be "unjust," *see* 770 F.Supp. at 480. Nevertheless, it invited the attorneys to submit their comments regarding the proposed fee award. Their positions have been considered and, in response, the court will set the plaintiff's total attorney's fee award at $2,700.

### I.

The plaintiff, Thomas Mahoney, was represented by two attorneys during the prosecution of his civil rights action: Patrick Mahoney, the plaintiff's father, and Sharon Sullivan, then employed as an assistant corporation counsel for the city of Chicago.

According to the records of the clerk of court, Patrick Mahoney was admitted to the bar of this court twice—in 1974 and again in 1990. The action was initiated when Patrick Mahoney filed the complaint on behalf of his son, Thomas, on March 5, 1990. As the action progressed to trial, the court scheduled the first of two status conferences at which scheduling matters were to be discussed. At the initial status conference, Patrick Mahoney appeared for the plaintiff. Defendant Russell Kesery appeared by Milwaukee assistant city attor-

Sharon Sullivan, Chicago, Ill., for plaintiff.

Grant F. Langley, City Atty. by Scott G. Thomas, Asst. City Atty., Milwaukee, Wis., for defendants.

### DECISION AND ORDER

MYRON L. GORDON, Senior District Judge.

The plaintiff's complaint in this civil rights action under 42 U.S.C. § 1983 con-

ney Scott Thomas; defendant Mary Smith appeared by Milwaukee county principal assistant corporation counsel Mary Ellen Poulos. At the second status conference, called on September 4, 1990, counsel for both defendants appeared; Patrick Mahoney did not.

His failure to appear triggered the dismissal of the action for failure to prosecute, without prejudice, on joint motion of the defendants. When the court notified Patrick Mahoney of this disposition, he filed a petition for reinstatement of his action; with his petition, he proffered an excuse for his failure to appear: the court had not sent him a copy of the minute order for the initial conference as he claimed was the practice in other courts in which he practiced. Notwithstanding the flimsiness of Mr. Mahoney's excuse, the court reinstated the action and burdened each defendant's counsel with reappearing at another status conference. At that conference, the action was put back on track, and counsel were informed that the trial would be held in May or June of 1991.

By letter of February 27, 1991, the court informed counsel of their trial date: Monday, May 6, 1991. By letter of April 23, 1991, the court directed the parties to meet and to prepare a joint pre-trial report. In its letter, which has been included as Appendix A to this decision, the court requested Patrick Mahoney to arrange a meeting of counsel. Regrettably, the contemplated joint pre-trial report never came into existence.

It is an understatement to say that Patrick Mahoney disregarded the court's instruction. When the court explored the matter, it learned that Mr. Mahoney did not even attempt to arrange such a meeting to prepare the report; moreover, he did not participate in the preparation of the report to any significant degree. Mr. Mahoney abandoned the task to Mr. Thomas and Ms. Poulos. In open court, they told the court that as the due date for the report (May 3, 1991) drew near, they believed that they had no choice but to prepare the "joint" pre-trial report without Mr. Mahoney's assistance. Ms. Poulos' numerous telephone calls to Mr. Mahoney's office went unreturned; Mr. Thomas' calls were not returned until he and Ms. Poulos had virtually completed the report.

Without the initiative and efforts of Mr. Thomas and Ms. Poulos, the court would have been without a pre-trial report of any kind. The report that *was* submitted was not satisfactory insofar as it lacked the contemplated joint submissions. Patrick Mahoney's disregard of his obligations pursuant to the court's request unfairly caused Mr. Thomas and Ms. Poulos alone to expend efforts that were to have been shared by all counsel.

As scheduled, the action was called for trial on Monday, May 6, 1991. At that time, Patrick Mahoney expressed a concern that he had only recently learned that the defendants would be calling him to testify as a witness at trial. He notified the court that because of the defendants' intentions he would no longer be representing his son in the action. He announced that Ms. Sullivan would undertake the representation of the plaintiff and ultimately made a motion for her admission, *pro hac vice,* which motion was granted. *See* Tr. at 2, 32–33 (Monday, May 6, 1991). *See also* Local Rule 2, Section 2.03(d). A review of the entire transcript demonstrates that Mr. Mahoney totally gave way to Ms. Sullivan, who thereafter acted alone as the plaintiff's trial counsel.

After selecting a jury for the trial, the court continued the trial until Thursday, May 9, 1991, due to a scheduling conflict with an older case. When Patrick Mahoney expressed his concern that *he* would be unable to attend court on that date, the court replied as follows:

... And as far as Mr. Mahoney's problems, *he's a witness and not going to be counsel in the case.* And whoever is planning to call Mr. Mahoney, if you feel his presence is required for Thursday morning, you should use the subpoena power you have....

Tr. at 5 (Monday, May 6, 1991) (emphasis added). This announcement unequivocally manifested the court's understanding that Patrick Mahoney had ended his appearance as counsel in the action; the court's under-

standing was not then, or ever during the trial, questioned by either Mr. Mahoney or Ms. Sullivan.

Ultimately, Patrick Mahoney was called to testify as a witness on May 10, 1991. (Contrary to his statement that the defendants would call him as a witness, he was called by Ms. Sullivan on behalf of the plaintiff.) Pursuant to the governing rules of professional conduct, this was proper only because Mr. Mahoney had withdrawn as an advocate in the action. Notwithstanding his withdrawal, Mr. Mahoney continued to sign various motions, pleadings and papers after he had withdrawn. This, along with his aforementioned conduct, prompted the court to call him to show cause why he should not be reprimanded.

When called before the court on that matter, Patrick Mahoney apologized for having failed to assist in the preparation of the pre-trial report. He explained that he had been busy with his other cases and recounted his alleged efforts to discuss the pre-trial report with opposing counsel. However, Mr. Thomas and Ms. Poulos convincingly called into question the credibility of Mr. Mahoney's explanations. Furthermore, Mr. Mahoney acknowledged on the record his knowledge of the rules governing the "attorney as witness" problem: "If somebody is going to use you as a witness, you can't be the trial counsel." Tr. at 95 (Friday, May 10, 1991). Accordingly, he apologized for having continued to sign pleadings and papers—in particular a motion in limine filed during the trial—after he had withdrawn his appearance as counsel in the action.

Based upon the foregoing, the court was constrained to observe that the conduct of Patrick Mahoney was "delinquent, negligent, and cavalier"—far below the standard of practice before this court. Tr. at 104 (Friday, May 10, 1991). The court directed the clerk of court to record an order of reprimand. Tr. at 105 (Friday, May 10, 1991).

## II.

### A.

By virtue of the jury's $20,000 verdict (and the court's denial of defendant Kes-

ery's post-trial motions), the plaintiff is the "prevailing party" on at least a portion of his claims in this 42 U.S.C. § 1983 action. He "prevailed" on both of the claims he had asserted against defendant Kesery, although defendant Smith "prevailed" on both claims the plaintiff had asserted against her.

Under 42 U.S.C. § 1988, in the exercise of its discretion, the court "may allow the prevailing party ... a reasonable attorney's fee as part of the costs." However, the discretion accorded the court under § 1988 is "not without limit." *Blanchard v. Bergeron,* 489 U.S. 87, 89 n. 1, 109 S.Ct. 939, 942 n. 1, 103 L.Ed.2d 67 (1989); *Hensley v. Eckerhart,* 461 U.S. 424, 429, 103 S.Ct. 1933, 1937, 76 L.Ed.2d 40 (1983). The "prevailing party" in a § 1983 action "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Blanchard,* 489 U.S. at 89 n. 1, 109 S.Ct. at 942 n. 1 (*quoting Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968)).

In its decision and order of July 18, 1991, the court suggested that Patrick Mahoney's conduct was to be viewed as a "special circumstance" that *must* be reflected in the plaintiff's award of attorney's fees, *see* 770 F.Supp. at 480. Having then examined the conduct of Patrick Mahoney, the court, in the exercise of its discretion, proposed to award a nominal fee of $200. Examination of Ms. Sullivan's participation in the action suggested that her pre-trial preparation time was very limited. She served only as trial counsel in the relatively short trial of the action (which required less than 15 hours of court time). At an hourly rate of $75, the court proposed to award her attorney's fee of $1,275, *see* 770 F.Supp. at 480.

Now, with the benefit of Patrick Mahoney's and Ms. Sullivan's statements, the court has reexamined the record of proceedings in an attempt to ascertain a reasonable attorney's fee pursuant to 42 U.S.C. § 1988.

## B.

Along with their objections to the court's decision of July 18, 1991, Patrick Mahoney and Ms. Sullivan have submitted what they purport to be their actual billing or time records.

Patrick Mahoney's billing records list 92.8 hours of involvement in the action. However, these records disclose that many hours were billed *after* he had withdrawn as counsel for his son. With exceptions that are not pertinent here, Rule 3.7(a), Model Rules of Professional Conduct (with emphasis added), provides that "[a] lawyer *shall not* act as an advocate at a trial in which the lawyer is likely to be a necessary witness...." Cognizant of this rule, at the outset of trial, Mr. Mahoney acknowledged on the record that he would be unable to act as trial counsel should he testify as a witness in the action; he subsequently testified as a witness.

Nevertheless, Patrick Mahoney has since suggested that he did not withdraw; he suggests that the court misunderstood the effect of his representations. If there was such a misunderstanding, neither he nor Ms. Sullivan made any timely attempt to correct it. At trial, the court on many occasions manifested its understanding that Mr. Mahoney had withdrawn. At no time did Ms. Sullivan or Mr. Mahoney make even the slightest attempt to alert the court to a different interpretation. When Patrick Mahoney was called upon by the court to show cause why he should not be reprimanded, I believe that he was aware of the court's understanding on this matter. However, the various excuses and explanations that Mr. Mahoney proffered at that time did not include any claim or suggestion that he had not withdrawn as counsel. *See generally* Tr. at 93–105 (Friday, May 10, 1991). In fact, that he had withdrawn as counsel for his son was tacit in his in-court explanation as to how he had wrongfully (but intentionally) attempted to file papers with the court *after* his withdrawal, *see* Tr. at 95–96 (Friday, May 10, 1991). It was not until some time after the trial had been completed that Mr. Mahoney called this "misunderstanding" to the attention of the court.

■ Patrick Mahoney has not given the court any adequate reason to warrant a reversal of its original understanding that he had withdrawn from the representation of his son at the onset of the trial. A review of the file and trial transcripts discloses that Mr. Thomas and Ms. Poulos share the court's understanding of Mr. Mahoney's "withdrawal." At all events, the court is satisfied that even if Mr. Mahoney had not earlier thought that he had withdrawn as attorney for his son, his appearance as a witness contemporaneously had that effect. *See* Rule 3.7(a), Model Rules of Professional Conduct.

Examination of Patrick Mahoney's billing records reveals that 35.5 of the hours he purports to have expended in this action were expended *after* he had withdrawn as attorney. Moreover, while Mr. Mahoney's billing records suggest that he was present in court on Thursday, May 9, 1991, Ms. Sullivan disclosed on the record that day that he was not present. Tr. at 8 (Thursday, May 9, 1991). In addition, his billing records reveal that during the time he was to have assisted with the joint pre-trial report, he made but a single call to Mr. Thomas and no calls to Ms. Poulos. His own records directly contradict his in-court representations to the court on that matter. Of the remaining hours billed by Mr. Mahoney, included are hours ostensibly for his *own* deposition as a fact witness.

■ At trial, Ms. Sullivan represented to the court that she had become involved in the action only after being contacted by Patrick Mahoney on the Friday afternoon before the Monday when trial was scheduled to begin. Tr. at 8 (Thursday, May 9, 1991). She now represents that she expended 66 hours on the action. However, her time records are not particularly helpful insofar as they list nothing more than the purported number of hours expended. Her records do not disclose the nature or content of her time expenditures.

Ms. Sullivan was a competent trial attorney, notwithstanding her failure to disclose exactly what tasks she had performed dur-

ing her billed hours. However, a careful review of the record convinces the court that most of her out-of-court tasks (such as the formulation of instructions) were to have been completed by Mr. Mahoney before Ms. Sullivan was retained in the action. *See* App. A. That being so, the court finds that it was necessary, hence reasonable, for Ms. Sullivan to expend only a limited number of hours for her out-of-court preparation for the two-day trial.

Ms. Sullivan claims to have spent twenty hours on the action during the weekend before the trial, twelve hours on the day the jury was selected, thirty hours during the two days of trial, and four hours on the intervening days. Some of those hours, as well as some of the hours expended in court, were patently unnecessary. For example, Ms. Sullivan devoted some trial time to examining Robert Rivers and Robert Erdmann, who were merely custodians of records sought to be admitted into evidence. However, neither defendant had any intention of objecting to the authenticity of those records. *See* Tr. at 41–42, 45–49 (Thursday, May 9, 1991). Had Patrick Mahoney pursued the joint pre-trial report that the court had requested, this would have been known to Ms. Sullivan. In addition, several in-court hours were unnecessarily expended in the pursuit of the dubious (and ultimately unsuccessful) claims against defendant Smith. Furthermore, the court notes that Ms. Sullivan unintentionally misled the court by citing, in opposition to the defendants' motion for a directed verdict, a case that had previously been *removed* from the published reports at the request of the deciding court: *Bittner v. Smith*, 697 F.Supp. 144 (S.D.N.Y.1988) (appearing in advance sheet only). *See* Tr. at 115 (Friday, May 10, 1991).

Given these considerations, along with the fact that the complete trial of the action lasted less than fifteen hours, the court has determined that Ms. Sullivan's billable "trial time" must be reduced from 30 hours to 15 hours. In addition, the court has determined her out-of-court billable time should not have exceeded ten hours. The total number of hours Ms.

Sullivan could *reasonably* have expended in this action is determined to be 25.

### C.

Having reviewed the entire record of proceedings, the court has, in the exercise of its discretion, determined an appropriate attorney's fee under 42 U.S.C. § 1988.

■ As to Patrick Mahoney, there are clearly "special circumstances" in this action that must be considered to make certain that a fee award to him is not "unjust," *see Blanchard*, 489 U.S. at 89 n. 1, 109 S.Ct. at 942 n. 1. "Special circumstances," in such a context as this, have been defined to include "the presence or absence of any bad faith or obdurate conduct on the part of either party [or] any unjust hardship that a grant or denial of fee-shifting might impose." *Stefan v. Laurentis*, 889 F.2d 363, 371 (1st Cir.1989) (*quoting Zarcone v. Perry*, 581 F.2d 1039, 1044 (2d Cir.1978)); *Burke v. Guiney*, 700 F.2d 767, 773 (1st Cir.1983).

Having reexamined the record in light of Patrick Mahoney's objection to the proposed $200 fee award, as before, the court finds those "special circumstances" to be "clearly and unarguably recognizable in the record as developed," *see Murphy v. Kolovitz*, 635 F.2d 662, 664 (7th Cir.1981) ("special circumstances" need not be "neatly packaged and labeled on the record to avoid reversal"). As Mr. Thomas and Ms. Poulos established at trial, Patrick Mahoney elected to burden them (and the court) with tasks *he* was to have performed. Accordingly, it would be unjust to permit him to recover any substantial fee, notwithstanding the congressional goal of encouraging persons to vindicate important civil rights. Furthermore, § 1988 contemplates at least a modicum of professionalism, which Mr. Mahoney did not provide to the court or opposing counsel. *Cf. Brown v. Stackler*, 460 F.Supp. 446, 447 (N.D.Ill. 1978) (denying prevailing civil rights litigant attorney's fees altogether where effect of fee petition was to "demean the dignity" of the judicial process), *aff'd*, 612 F.2d 1057 (1980). Given Patrick Mahoney's

demeanor and his disregard of the court's directions—"bad faith" and "obdurate conduct"—it would be inequitable and unjust to award him a fee in excess of a nominal $200 sum. The court's entry of an order of reprimand is telling evidence of the nature of Mr. Mahoney's conduct in this case. In light of the record, Mr. Mahoney's objection to this nominal fee award cannot be sustained.

In determining a reasonable attorney's fee award for Ms. Sullivan, the court must "multiply the number of hours reasonably expended by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Lynch v. City of Milwaukee*, 747 F.2d 423, 426 (7th Cir.1984). Ms. Sullivan had "the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley*, 461 U.S. at 437, 103 S.Ct. at 1941; *Zabkowicz v. West Bend Co.*, 789 F.2d 540, 548 (7th Cir.1986). She has failed to do so. Because Ms. Sullivan did not document the particular tasks she had performed during her participation in the action, the court had to undertake the reasonableness determination on its own. *See Zabkowicz*, 789 F.2d at 548–49 n. 8 (district court does not "improperly shoulder the defendant's burden of challenging the fee petition" when it finds a petition to be unreasonable).

As noted, the court is convinced that many of Ms. Sullivan's billed tasks should have already been completed by Patrick Mahoney when she was retained. Mr. Mahoney's omissions should not inure to the benefit of Ms. Sullivan. The unnecessary hours that Ms. Sullivan expended are presumptively unreasonable, *cf. Henry v. Webermeier*, 738 F.2d 188, 194 (7th Cir.1984) (unnecessary time "should be subtracted out"). Therefore, the calculation of a reasonable fee for Ms. Sullivan necessarily requires that the court adjust her billable hours—from 66 to 25. The court has determined, in the exercise of its discretion, that an expenditure by Ms. Sullivan of more hours than that would have been unreasonable. *See Lynch*, 747 F.2d at 427–28. In the application of its experience

in the relevant legal community, the court determines $100 to be the reasonable and appropriate hourly rate. (This is the hourly rate that Ms. Sullivan has requested) Accordingly, Ms. Sullivan's objection will be sustained to a limited extent; for her services, a reasonable attorney's fee of $2,500 will be awarded.

For the services both of Patrick Mahoney and Ms. Sullivan, the plaintiff's total attorney's fee award as a "prevailing plaintiff" under 42 U.S.C. § 1988 is $2,700.

### ORDER

Therefore, IT IS ORDERED that the plaintiff be and hereby is awarded total attorney's fees of $2,700 under 42 U.S.C. § 1988.

IT IS ALSO ORDERED that the clerk of court be and hereby is directed to amend the judgment against Russell Kesery to reflect the plaintiff's award of attorney's fees in the amount of $2,700.

### APPENDIX A

United States District Court

Eastern District of Wisconsin

April 23, 1991

Mr. Patrick E. Mahoney

Patrick Mahoney & Associates, P.C.

111 W. Washington St.

Chicago, IL 60602

Mr. Scott G. Thomas

Assistant City Attorney

City of Milwaukee

800 City Hall

200 E. Wells St.

Milwaukee, WI 53202–3551

Ms. Mary Ellen Poulos

Principal Assistant Corporation Counsel

Milwaukee County

901 N. Ninth St.

Room 303, Courthouse

Milwaukee, WI 53233

    Re: Mahoney v. Kesery, et al.

      Case No. 90–C–0224

Dear Counsel:

As you know, the jury trial of the above-captioned action has been scheduled for Monday, May 6, 1991, at 10:00 a.m. In lieu of a pre-trial conference, I request that counsel meet and jointly prepare and submit a pre-trial report. I request that Mr. Mahoney arrange the meeting of counsel.

The joint pre-trial report shall consist of the following: a joint statement of the uncontested facts, a joint statement of the contested facts, a short statement of each party's respective theories of liability or defense, admissions of fact and stipulations to avoid unnecessary proof, a joint list of witnesses that will be called to testify at trial, a joint list of all trial exhibits, stipulations to the authenticity of exhibits, proposed questions for voir dire, proposed jury instructions, a proposed verdict form, and a joint estimate of the duration of the trial.

I should be in receipt of the joint pretrial report no later than May 3, 1991.

Very truly yours,
(s) Myron L. Gordon
Myron L. Gordon